[Civ. No. 3034. Second Appellate District, Division Two.—November 5, 1919.]

## A. M. BAHEN, Respondent, v. GUY L. FURLEY et al., Appellants.

[1] DECEIT—ACQUISITION OF PROPERTY THROUGH FRAUD—PARTICIPATION IN PROCEEDS—NOTICE—LIABILITY.—One who participates with others in the receipts from the sale of property acquired through fraud and deceit practiced upon the owner, with knowledge of sufficient of the false representations at the time they are made to put any prudent person on inquiry, but who does not make such inquiry, cannot evade responsibility because he may not have been present when all the false or fraudulent statements were made.

[2] ID.—LACK OF KNOWLEDGE OF FRAUD—LIABILITY TO OWNER.— Where property is acquired from the owner through fraud and deceit and title is taken in the name of one not a party to the fraud, but the latter has no knowledge or notice of the fraudulent transaction and does not participate in any of the proceeds from the subsequent disposition of the property, he cannot be held liable to the defrauded owner in an action for damages because of the fraud.

APPEAL from a judgment of the Superior Court of Los Angeles County. Paul J. McCormick, Judge. Reversed in part; affirmed in part.

The facts are stated in the opinion of the court.

Tanner, Odell & Taft for Appellants.

William J. O'Brien for Respondent.

THOMAS, J.—Plaintiff brings this action against defendants to recover judgment for the total sum of $5,950, because of deceit practiced against him. The material allegations of the complaint, with the exception of certain formal points, were denied.

Without a word of explanation the record before us might be confusing. The explanation is that much of the testimony in the record refers to another case, tried in the superior court, but which cause is not the subject of this appeal—a suit brought by this same plaintiff against certain of the defendants here, and others who are not joined as defendants in this action. The trial of the present action followed immediately after the trial of that case. It was therefore stipulated that the evidence given in the first action, so far as applicable, should be considered as having been given in this matter. Both cases, it is stated, were fraud cases. The testimony introduced in the first case, to a great extent, it is urged, bears directly on this dispute. Judgment went for plaintiff in both cases, but appeal is taken in this action alone.

In support of the appeal appellants contend: (1) That the complaint is insufficient; (2) that there is no evidence in the record to support the finding against defendants Brown and Koontz; and (3) that there is no evidence to support the finding that the defendants Furley and Plumer were plaintiff's agents.

We have read the entire record, and are satisfied with the conclusion of the learned trial court on the point last urged. We think, beyond doubt, that defendants Furley and Plumer were the agents of plaintiff, and that he relied upon them as such; hence, there need be no discussion of their obligation to act in good faith with plaintiff. That they did not do so is amply shown by the evidence. (*Calmon* v. *Sarraille*, 142 Cal. 638, [76 Pac. 486].)

It is urged by appellants that their motion for nonsuit should have been granted as to both Brown and Koontz, for the reason that "there had not been any evidence introduced showing that Brown or Koontz had any guilty

knowledge or knowledge whatever of any representations made by Furley and Plumer, if any were made." [1] It is conceded that Koontz participated in the receipts from the sale of the property involved. The record shows, too, that he knew of some, if not all, of the false representations at the time they were made; that he went with Plumer to Corcoran, near which place the property in question is located, and returned "with an option on the Miller land"; that when the deal was closed Koontz (who was the notary public that took plaintiff's acknowledgment to the deed) told Bahen the deed was blank, and that the name of the grantee was not in it; that Bahen's note for eight hundred dollars "was delivered to the bank by Koontz, and the proceeds thereof placed to the credit of Furley and Koontz"; and that all the proceeds of the sale, after paying commissions, etc., were paid to Furley and Koontz. Indeed, if entirely ignorant of any false representations having been made, enough transpired to put any prudent person on inquiry. The record does not show that Koontz made any such inquiry, while it does show some participation in, and the proceeds resulting from, this very unfair treatment of plaintiff. Can it be successfully maintained, under the record here, that because he may not have been present when Furley or Plumer, or both, made *all* the false statements to plaintiff (notwithstanding the fact that the three were jointly interested in the transaction with plaintiff—*Corson v. Berson*, 86 Cal. 433, [25 Pac. 7]), that he can participate in their ill-gotten gains and evade responsibility? We think not.

[2] There remains, then, the sole question as to Brown, whom the court found "authorized the defendants Furley and Plumer to use his name in negotiating with the plaintiff, and that he agreed to allow them to prepare the said deed from plaintiff to himself, the said Brown, and the said note for eight hundred dollars in his favor, with knowledge that plaintiff was being deceived in the transaction." It is urged by appellants that "there is no evidence that Brown knew anything about any deception or representations or misrepresentations." As to the fraud practiced by the defendants Furley and Plumer against the plaintiff, there is no doubt. They misrepresented the facts to him to such

an extent as to qualify them for a place among the members of the Ananias Club. Unless the law imposes some duty on the defendant Brown to inquire as to the real purpose of the nefarious arrangement in the consummation of which he was instrumental in assisting the defendants Furley and Plumer, then, in the light of this record, he is innocent of any wrongdoing with respect to the transaction in question. The record contains nothing whatever to support that part of the finding which says that what he— Brown—did was done "with knowledge that plaintiff was deceived in the transaction." The defendant Brown testified as follows: "I am a resident of Santa Monica, and one of the defendants in this case. Mr. Plumer came to me in the spring of 1913 and said that he and Furley and Koontz wanted me to let them have a piece of property deeded to me. I agreed to do so, and that I would deed it whenever they all told me to. I did so. I never received anything for it." The record discloses nothing further. The transaction was in itself not illegal. It was, perhaps, out of the ordinary, as honest men deal with one another. It would seem that a prudent man, by the very suggestion of such an arrangement, would have asked some questions as to why they wanted this done. Does the law impose some duty upon one in this position? Does the failure to so exercise that duty subject him to the same liability as though he knew? Does the law impute to him knowledge of facts which might have been his had he made inquiry? Defendant Brown did not participate in any of the proceeds; he made no false representations; he practiced no deceit; he did not conspire or authorize others to practice deceit. Unless the answer to the questions just submitted be in the affirmative, it would seem that because of the part which he took in this transaction he cannot be subjected to liability for damages.

Appellants concede that in accepting title to the property traded by plaintiff to Furley, Plumer, and Koontz, Brown became a trustee without any agreement of compensation for acting as such; that as to them his trust was a voluntary one; that his holding of the property was their holding; that if they—the first three mentioned—had obtained the property from plaintiff by fraud, an involuntary or resulting trust would have arisen in them to hold the prop-

erty and return it to plaintiff upon demand; and that had plaintiff served any notice on Brown that he—plaintiff —had any claim to said property, prior to his disposing of the same, that in that event he—Brown—would have become an involuntary trustee for plaintiff's benefit. No notice having been given, and Brown having no knowledge of the fraud, it is urged that he is and cannot be liable under such condition. With this contention we are in full accord. The burden of proof to show Brown's knowledge of the fraud was on plaintiff, and has not been met. It was not incumbent upon this defendant to prove his innocence. In the absence of showing of fraud, undue influence, accident, or mistake, wrongful act or fiduciary relation on the part of defendant Brown, we know of no law, and none has been called to our attention, which authorizes or supports a theory which would hold one liable under such circumstances as disclosed here. We have examined every case cited by respondent on this phase of the controversy, and we think none of them in point. In every case cited the person taking the deed, or found by the court to be an involuntary trustee, took with knowledge of the fraudulent transaction.

The judgment is reversed as to the defendant Brown, but otherwise affirmed.

Finlayson, P. J., and Sloane, J., concurred.